Case 2:09-cv-06223-ODW-FMO   Document 1   Filed 08/26/09   Page 1 of 13   Page ID #:1

COPY

DONALD W. SEARLES, Cal Bar No. 135705
Email: searlesd@sec.gov
FINOLA H. MANVELIAN, Cal Bar No. 180681
Email: manvelianf@sec.gov
JESSICA R. PUATHASNANON, Cal. Bar No. 2208074
Email: puathasnanonj@sec.gov
C. DABNEY O'RIORDAN, Cal. Bar No. 205158
Email: oriordand@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Rosalind R. Tyson, Regional Director
Andrew G. Petillon, Associate Regional Director
John M. McCoy III, Regional Trial Counsel
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036-3648
Telephone: (323) 965-3998
Facsimile: (323) 965-3908

FILED 2009 AUG 26 AM 10:25 CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. LOS ANGELES

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>BEN-WAL LEASING COMPANY; BEN-WAL MANAGEMENT, INC.; and JERRY E. BENSON,<br><br>Defendants,<br><br>and<br><br>CTR WEB PRINTING, INC.; and SCOTT W. BENSON,<br><br>Relief Defendants. | Case No. CV09-06223 ODW FMOx<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES LAWS** |

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e), and 78aa. Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce or of the mails, in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

2. Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because certain of the transactions, acts, practices, and courses of conduct constituting violations of the federal securities laws occurred within this district, defendants Ben-Wal Leasing Company and Ben-Wal Management, Inc. are located in this district, and defendant Jerry E. Benson resides and transacts business in this district.

## SUMMARY

3. This matter involves an ongoing fraud targeting seniors residing in mobile home park communities by Pomona, California-based Ben-Wal Leasing Company ("Ben-Wal Leasing"), Ben-Wal Management, Inc. ("Ben-Wal Management"), and their sole owner, Jerry E. Benson ("Benson") (collectively, "the defendants"). Since approximately 1990, Benson has been offering and selling securities in Ben-Wal Leasing in the form of promissory notes, guaranteeing annual returns of 12% and claiming that investors have earned annual returns up to 18%. Ben-Wal Leasing raised at least $5.7 million from approximately 126 investors from 2004 through April 2009.

1

4. The defendants offered the securities through advertisements in circulars provided to mobile home park communities throughout California. Many of the investors are senior citizens. Benson told investors that their funds would be used to purchase printing equipment that would be leased to printing companies. The income from the printing companies' lease payments would pay the 12% returns to investors. Benson also claimed that since 1990, no investor had ever lost any of their principal or interest.

5. In reality, the defendants did not invest investor money as represented. Instead, a significant amount of investor money was transferred to CTR Web Printing, Inc. ("CTR"), a company owned and operated by Benson's son, Scott W. Benson. In addition, Benson did not disclose to investors that CTR was, in essence, the only lessee of printing equipment, and it was not regularly making its lease payments. Moreover, Benson never informed investors that Ben-Wal Leasing was using new investor money to make principal and interest payments to previous investors in a Ponzi-like fashion.

6. In May 2009, Benson and Ben-Wal Leasing stipulated to an order issued by the California Department of Corporations ("DOC"), which required Benson and Ben-Wal Leasing to desist-and-refrain from offering or selling securities in California in violation of state law. In June 2009, Ben-Wal Leasing stopped making interest payments to investors. Benson first falsely claimed to investors that the cessation of payments was due to some account discrepancies requiring an audit. More recently, Benson falsely told investors they were not being paid because he was working with the Commission to "expand business" and the Commission had not approved the payments. Despite the DOC desist-and-refrain order, Benson is currently soliciting new investors under a different name: Ben-Wal Management, Inc.

7. Ben-Wal Leasing and Benson have thus violated and continue to violate the antifraud provisions of Section 17(a) of the Securities Act, 15 U.S.C. §

77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. In addition, Ben-Wal Management has thus violated and is continuing to violate the antifraud provisions of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a). By this action, the Commission seeks a temporary restraining order and preliminary and permanent injunctions prohibiting future such violations, an order freezing the defendants' assets and assets of relief defendant CTR, requiring accountings, prohibiting the destruction of documents by the defendants and CTR Web Printing, Inc. and Scott W. Benson (collectively "the relief defendants"), granting expedited discovery as to the defendants and the relief defendants, and appointing a temporary receiver over defendants Ben-Wal Leasing and Ben-Wal Management. The Commission also seeks an order requiring disgorgement of the defendants' and the relief defendants' ill-gotten gains, and civil penalties.

## THE DEFENDANTS

8. **Ben-Wal Leasing Company** was incorporated in California on December 17, 1990, and is based in Pomona, California. Neither Ben-Wal Leasing nor its securities are registered with the Commission. On May 6, 2009, the DOC issued an order requiring that Ben-Wal Leasing and Benson desist-and-refrain from offering or selling securities in violation of California state law.

9. **Ben-Wal Management, Inc.** was incorporated in California on June 15, 2009, and is based in Pomona, California. Ben-Wal Leasing and Ben-Wal Management are located at the same address. Neither Ben-Wal Management nor its securities are registered with the Commission.

10. **Jerry E. Benson**, age 69, resides in Glendora, California. Benson formed Ben-Wal Leasing and Ben-Wal Management, developed their alleged investment programs, and currently remains their sole owner. Benson is currently in control of CTR and is a signatory on all Ben-Wal Leasing, Ben-Wal Management, and CTR bank accounts. Benson is not registered with the

Commission in any capacity.

## RELIEF DEFENDANTS

11. **CTR Web Printing, Inc.** was incorporated in California on January 23, 2004, and is based in Pomona, California. CTR is a commercial printer and is located at the same address as Ben-Wal Leasing and Ben-Wal Management. CTR was formed and is owned by Scott W. Benson, the son of Jerry Benson, who has recently taken control of the company.

12. **Scott W. Benson**, age 45, resides in Glendora, California. Scott Benson was the owner of CTR, but has recently left the company.

## THE FRAUDULENT SCHEME

### A. The Offer and Sale of Securities in Ben-Wal Leasing

13. Benson has solicited investments in Ben-Wal Leasing for approximately nineteen years. Shortly after Benson formed Ben-Wal Leasing in December 1990, he started soliciting investors. Benson has been soliciting investors by using written advertisements. According to Benson, the advertisements were placed at no fee "if there's space available" in monthly circulars printed by CTR. CTR was the printing company that many mobile home park communities used to print monthly in-house newsletters or circulars. Each month, the circulars went to 50 to 70 mobile home park communities in California, and were ultimately distributed to 10,000 to 12,000 individuals. In return for their investment in Ben-Wal Leasing, Benson and Ben-Wal Leasing promised investors a 12% return and claimed that investors have earned annual returns up to 18%. From 2004 through April 2009, at least 126 investors invested over $5.7 million in Ben-Wal Leasing. In addition to the advertisements in the monthly circulars, Benson occasionally mailed letters to investors asking them to make additional investments or to refer new investors, offering a bonus for those that did. Some investors elected to reinvest their returns in lieu of receiving monthly interest payments.

### B. Benson and Ben-Wal Leasing Materially Misrepresented the Investment

14. Benson made numerous material misstatements and omissions when he offered and sold the security interests in Ben-Wal Leasing. Benson told investors that their money would be used to purchase printing equipment, which Ben-Wal Leasing would then lease to printing companies, providing the 12% annual returns to the investors. These statements were false as of April 2006, if not earlier. Bank records reveal only a fraction of the investor money raised by Ben-Wal Leasing was actually spent by Benson on the purchase of printing equipment. According to Ben-Wal Leasing's bank records, from April 2006 through May 2009, investors made approximately $5 million worth of investments in Ben-Wal Leasing. During that time, Ben-Wal Leasing disbursed approximately $2.4 million to investors, $2.6 million to CTR, $144,000 to Benson, $32,000 to Scott Benson, and $825,000 to other sources. Even if all of the money disbursed to other sources was for the purchase of printing equipment, it would still be only a fraction of the $5 million invested in Ben-Wal Leasing during those three years.

15. Moreover, since at least 2006, Ben-Wal Leasing's bank records reveal that CTR is the only company to which Ben-Wal Leasing leased printing equipment. These bank records also show that CTR has only made sporadic lease payments to Ben-Wal Leasing totaling approximately $489,000 from April 2006 to May 2009. However, during this time, Ben-Wal Leasing had paid investors approximately $2.4 million. Thus, the lease payments have not been sufficient to cover the principal and interest paid to investors.

16. In addition to his material misrepresentations, Benson also failed to inform investors of material facts regarding Ben-Wal Leasing's business. He failed to inform investors that since at least 2006: (1) Ben-Wal Leasing was using new investor funds to pay returns to prior investors; (2) the only printing company that was leasing equipment from Ben-Wal Leasing was CTR, which was owned by his son; (3) in addition to a lease arrangement, Ben-Wal Leasing was loaning

investor money to CTR; and (4) CTR was not making regular lease or loan payments.

### C. Benson's False Claims to Investors About Delays in Interest Payments

17. In a letter dated June 17, 2009 (two days after forming Ben-Wal Management), Benson informed Ben-Wal Leasing investors that it would have to delay interest payments. Initially, Benson falsely claimed that the delay was due to "discrepancies found in some of the investor statements," which required an audit. In late July 2009, Benson sent another letter to investors falsely claiming he was not making any principal or interest payments because he needed approval by the Commission before he could do so. Moreover, Benson falsely claimed that "Ben-Wal Leasing has been working closely with the Securities Exchange Commission (SEC) to try and expand business." Benson continues to solicit new investors under a different company name: Ben-Wal Management.

### D. Ben-Wal Management Offers the Same Securities

18. On June 15, 2009, Benson formed Ben-Wal Management, Inc. Shortly after forming the company, Benson once again sought investors through advertisements in the monthly circulars provided to mobile home park communities. The offering is essentially identical to the offering by Ben-Wal Leasing -- only the name of the company has changed. In particular, the advertisements still offer 12% interest, describe that the investments started in 1990, explain that investor funds will be used to purchase printing equipment, and that it obtains the 12% returns by leasing that equipment.

19. Benson also makes other misrepresentations to investors in the current advertisements. The advertisements falsely state that since 1990 "**[n]o investor has ever lost any part of their investment or interest.**" This is false and misleading since at least one investor asked for the return of his principal in December 2008 in order to pay for the medical care of his seriously ill wife. While Benson and Ben-Wal Leasing have returned a small portion of the investor's

6

1  money, they have failed to return all of his principal and they still owe the investor
2  $52,000 plus interest. Further, Ben-Wal has not been making interest payments to
3  investors for the last few months.

4      20.   In addition, the new advertisements falsely claim that investments will
5  be protected by filings under the Uniform Commercial Code. The advertisements
6  state that "The **INVESTOR'S CAPITAL IS PROTECTED** by a UCC filing with
7  the state of California in behalf of all investors . . . secured by over $3,485,000.00
8  of assets. This puts you in a first position, if ever there should be a failure of the
9  company for any reason." However, at least $4.7 million is currently invested in
10 Ben-Wal Leasing. Thus, even if the value of the underlying assets is as claimed,
11 the UCC filing is insufficient to cover current principal, let alone any new
12 investments. Furthermore, the claim that any new investors would be in a "first
13 position" because of the UCC filing is false.

14     21.   Ben-Wal Management's solicitation materials also fail to disclose to
15 investors that Benson is subject to the DOC's desist-and-refrain order and that the
16 advertisements are a violation of that order.

17 **E.   Investor Funds Received by Benson, Scott Benson, and CTR**

18     22.   Benson regularly commingled the assets -- including investor funds --
19 of Ben-Wal Leasing and CTR. To date, at least $2.6 million has been transferred
20 from Ben-Wal Leasing to CTR. Ben-Wal Leasing's bank records also reveal that
21 between April 2006 and May 2009, defendant Jerry Benson and relief defendant
22 Scott Benson received approximately $144,000 and $32,000 respectively from
23 Ben-Wal Leasing. Furthermore, CTR's bank records reveal that money has been
24 transferred from CTR to both defendant Jerry Benson and relief defendant Scott
25 Benson.

26 **F.   Defendants Acted With Scienter**

27     23.   Each of the defendants acted with scienter. Benson, on behalf of Ben-
28 Wal Leasing, misrepresented that investor funds would be used to purchase

7

printing equipment and that investor returns would be derived from the leasing of printing equipment. In addition, Benson failed to disclose to investors that: (1) the only printing business to which it leased equipment was CTR; (2) Ben-Wal Leasing was also loaning money to CTR; and (3) CTR regularly failed to make its lease or loan payments. Most significant, Benson failed to tell investors that new investor money was being used to pay previous investors' interest payments. In his capacity as the sole owner of Ben-Wal Leasing, Benson made misleading representations to investors and prepared the promotional materials for potential investors about Ben-Wal Leasing that misrepresented the use of the investment proceeds, the source of the returns, and the risk of investment.

24. Ben-Wal Management, through the conduct of Benson, also acted with scienter because Benson knew that the above representations were false and misleading. The investor who has been asking for the return of his principal since December 2008 has been communicating directly with Benson. Further, Benson knew that at least $5.7 million has been invested since 2004 and that of that amount, at least $4.7 million of principal remains outstanding, thereby rendering false the representation that the UCC filing would protect the interests of new investors. Finally, Benson signed a stipulation to the May 2009 DOC desist-and-refrain order and knew that he never disclosed that order to potential new investors.

## FIRST CLAIM FOR RELIEF
## FRAUD IN THE OFFER OR SALE OF SECURITIES
### Violations of Section 17(a) of the Securities Act
### (Against All Defendants)

25. The Commission realleges and incorporates by reference paragraphs 1 through 24 above.

26. Defendants Ben-Wal Leasing, Ben-Wal Management, and Benson, and each of them, by engaging in the conduct described above, directly or

8

indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails:

    a.    with scienter, employed devices, schemes, or artifices to defraud;

    b.    obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    c.    engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

27. By engaging in the conduct described above, defendants Ben-Wal Leasing, Ben-Wal Management, and Benson violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

## SECOND CLAIM FOR RELIEF
## FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**
**(Against Ben-Wal Leasing and Benson)**

28. The Commission realleges and incorporates by reference paragraphs 1 through 24 above.

29. Defendants Ben-Wal Leasing and Benson, and each of them, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

    a.    employed devices, schemes, or artifices to defraud;

9

  b.  made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

  c.  engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

By engaging in the conduct described above, defendants Ben-Wal Leasing and Benson violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that the defendants committed the alleged violations.

### II.

Issue an order, in a form consistent with Fed. R. Civ. P. 65(d), temporarily, preliminarily and permanently enjoining defendants Ben-Wal Leasing, Ben-Wal Management, and Benson and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

### III.

Issue an order, in a form consistent with Fed. R. Civ. P. 65(d), temporarily, preliminarily and permanently enjoining defendants Ben-Wal Leasing and Benson and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the

1 | order by personal service or otherwise, and each of them, from violating Section
2 | 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder, 17
3 | C.F.R. § 240.10b-5.

### IV.

Issue in a form consistent with Fed. R. Civ. P. 65, a temporary restraining order and a preliminary injunction freezing the assets of defendants Ben-Wal Leasing, Ben-Wal Management, and Benson, and relief defendant CTR; ordering accountings from each of the defendants; prohibiting each of the defendants and the relief defendants from destroying documents; granting expedited discovery as to the defendants and the relief defendants; and appointing a receiver over defendants Ben-Wal Leasing and Ben-Wal Management.

### V.

Order defendants Ben-Wal Leasing, Ben-Wal Management, and Benson, and relief defendants CTR and Scott Benson to disgorge all ill-gotten gains, together with prejudgment interest thereon.

### VI.

Order defendants Ben-Wal Leasing, Ben-Wal Management, and Benson to pay civil penalties under Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

### VII.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

///
///
///
///

## VIII.

Grant such other and further relief as this Court may determine to be just and necessary.

DATED: August 25, 2009

_____
Attorneys for Plaintiff
Securities and Exchange Commission